IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Ernest Bittle, Jr.,                  )
                                     )
          Plaintiff,                 )
                                     )
v.                                   )          1:07cv00155
                                     )
Electrical Railway Improvement       )
Company (d/b/a ERICO or ERICO        )
Products, Inc.),                     )
                                     )
          Defendant.                 )


**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge

     This is an action alleging failure to promote, retaliation, and hostile work environment brought by Plaintiff Ernest Bittle, Jr. ("Bittle"), under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (2003) ("Title VII"), and 42 U.S.C. § 1981 (2003).[1]  (Doc. 1 ¶ 1.)  Before the court is the motion for summary judgment by Bittle's employer, Defendant Electric Railway Improvement Company ("ERICO").  (Doc. 19.)  For the reasons set forth herein, the motion will be granted and this action dismissed.

---

[1]  Bittle also alleges generally claims under the First and Fourteenth Amendments to the United States Constitution.  (Doc. 1 ¶ 1.)  Because Bittle fails to allege and provide proof of state action, these claims are dismissed as without merit.  Debauche v. Trani, 191 F.3d 499, 510 (4th Cir. 1999).

## I.  BACKGROUND

The following facts are derived from ERICO's filings inasmuch as Bittle failed to respond to the motion for summary judgment.[2]  While the evidentiary showing will be construed in the light most favorable to him, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), Bittle clearly has disadvantaged himself by not offering any evidence to controvert the record.  Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993).

ERICO makes precision-engineered specialty metal products, including grounding rods, for a variety of industries in its Aberdeen, North Carolina, facility.  (Doc. 19 Ex. B ¶ 2.) Bittle was hired by ERICO in 1988[3] and, except for a period when he was terminated for failure to return from a leave of absence, held several positions, from plating material handler, to machine operator, to plating technician.  (Id. Ex. E at 28-29; Doc. 20 at 2.)  In the mid-1990s, he was given the title of plating group leader, which he holds today.  (Doc. 1 ¶ 8; Doc.

---

[2]  Bittle failed to respond to the motion, despite this court's issuance of a letter providing him with fair notice of the requirements of the summary judgment rule, pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).  (Doc. 21.)  In this letter, the court warned, among other things, that "unless you file a response in opposition to the defendant's motion, it is likely your case will be dismissed or summary judgment granted in favor of the defendant."  (Id. at 1.)

[3]  Elsewhere, Bittle claims that ERICO hired him in 1989.  (Doc. 1 ¶ 8.)  For purposes of this motion, the court relies on the date to which he testified in his deposition.

2

19 Ex. E at 29-30.) In that capacity, he oversees a plating production team that manufactures grounding rods during one of the company's night shifts. (Doc. 19 Ex. B ¶ 2.) The responsibilities of a plating team leader include quality control, satisfaction of production goals, safety, housekeeping, and other supervisory activities. (<u>Id.</u> Ex. E at 56, Ex. H, Ex. I.) In 2006, ERICO had four such teams, three of which were led by African Americans like Bittle, and the fourth of which was led by a Caucasian. (<u>Id.</u> Ex. E at 43-44, 52.)

In the spring of 2005, ERICO's plant manager, Jarvis Daniel ("Daniel"), decided to form a "process control group" in the plating department where Bittle worked. (<u>Id.</u> Ex. A ¶ 3.) The purpose of this new group was to "improve the efficiency of the production process and to minimize any problems resulting from equipment malfunctions and/or chemical imbalances." (<u>Id.</u>) The group was also responsible for ensuring that all processes, including the pollution abatement equipment and wastewater system, were performing efficiently, so the team leaders could better focus on their day-to-day duties. (<u>Id.</u>)

ERICO constituted the process control group with three Caucasians (Joe Holt, Jerry Lewis, and Ricky Pope) and one African-American (Frank Bryant). (<u>Id.</u> Ex. E at 48, 52.) Holt was the company's wastewater technician and, according to ERICO and conceded by Bittle, had served as a "coordinator" since

3

1993. (Id. Ex. A ¶ 4; Ex. E at 74-76, 92.) Holt was certified by the State of North Carolina in water pollution control systems operations, which ERICO deemed important for his work, and by EHS Associates, Inc., in the handling of hazardous materials.[4] (Id. Ex. A ¶¶ 4, 5; Ex. E at 53.) Holt had been directly involved with the coordination, installation and upgrade of all plating systems within the company. (Id. Ex. A ¶ 4; Ex. E at 114-15.) He oversaw several tasks related to the plating teams, including maintenance and operation of the pollution abatement equipment and wastewater systems (known as the Memtek System). (Id. Ex. A ¶ 4; Ex. E at 76, 87-88.)

In July 2005, ERICO formally recognized Holt as the process control "coordinator" and, thus, as the leader of the process control group. (Id. Ex. A ¶ 5.) ERICO contends that this was merely a title change to better describe the duties he was performing and fell within a company policy that allows ERICO to change employees to higher labor grade jobs "on the basis of ability and work record and in the discretion of [m]anagement." (Id. Ex. A ¶ 6; Ex. G.) ERICO did not post the position for applications by other employees "because Joe Holt had essentially been performing in this position for several years." (Id. Ex. A ¶ 6.)

---

[4] As of 2006, ERICO had only one other employee, an African-American, who was certified in water pollution control systems operations. (Doc. 19 Ex. E at 89-90.)

ERICO employs a graded pay scale. (Id. ¶ 7.) The higher the grade level, the higher the pay, though each grade level has a salary cap. (Id.) As of 2004, plating team leaders like Bittle were classified as grade level 8. (Id.) By comparison, Holt was classified as grade level 11 because he had more contact with others within and without the plant, more exposure to confidential data, and more potential for negative impact from his errors. (Id.) In July 2005, when Holt was recognized as the process control group leader, his grade level remained the same because he was performing the same functions. (Id.)

Bittle has consistently been one of the highest-rated performers of the plating team leaders. (Id. Ex. B ¶ 3.) In his July 2005 evaluation, he received the highest rating of the plating team leaders and the second highest rating of the team leaders and Holt. (Id. Ex. B ¶ 3, Ex. E at 161-62.) He acknowledges that he received many positive remarks in that evaluation (id. Ex. E at 164-65) but was criticized for lacking a positive attitude, a trait he admits but about whose importance he disagrees. (Id. Ex. E at 166).

On August 25, 2005, Bittle filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), claiming that ERICO racially discriminated against him by not considering him for the coordinator job awarded to Holt, providing an unfavorable performance evaluation, and denying him

5

a pay raise comparable to that awarded to a white co-worker. (Doc. 1 Ex. A.) The EEOC was unable to determine whether the alleged facts established unlawful discrimination and, in November 2006, issued a right to sue letter. (Id.)

Bittle continued to receive among the highest evaluations of his peers after filing his EEOC charge. (Doc. 19 Ex. B ¶ 3.) In his 2006 year-end review, he received the highest overall score among plating team leaders. (Id.) Bittle also termed his 2007 and 2008 reviews as "all right." (Id. Ex. E at 181-82.) He reached the salary cap for his grade level, leaving room only for cost of living, but not merit, increases. (Id. Ex. E at 182.)

## II. ANALYSIS

Summary judgment is appropriate when "there is no genuine issue of material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The material facts are those identified by controlling law as essential elements of the claims asserted by the parties. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is sufficient for a reasonable juror to find for the nonmoving party. Id. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his case as to which he bears the burden of proof at trial. Celotex Corp. v.

<u>Catrett</u>, 477 U.S. 317, 322-23 (1986).  In evaluating the motion, the court views the facts and all reasonable inferences in the light most favorable to the nonmoving party.  <u>Matsushita</u>, 475 U.S. at 587.

The moving party bears the burden of initially "demonstrat[ing] the absence of a genuine issue of material fact."  <u>Celotex</u>, 477 U.S. at 323.  Once the moving party has carried its burden, the nonmoving party must come forward with evidence showing more than some "metaphysical doubt" that a genuine and material factual issue requires trial.  <u>Matsushita</u>, 475 U.S. at 586.  Trial is unnecessary if "the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question."  <u>Mitchell v. Data Gen. Corp.</u>, 12 F.3d 1310, 1315-16 (4th Cir. 1993).  "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'"  <u>Custer</u>, 12 F.3d at 416.

A.  **Failure to Promote Claim**

Bittle claims violation of 42 U.S.C. §§ 2000e-2[5] and 1981[6] because ERICO allegedly failed to promote him to the newly

_____

[5]  In the Complaint, Bittle mistakenly cites section 2000e-3 instead of section 2000e-2 in support of his failure to promote claim.  (Doc. 1 ¶ 25); <u>Fountain v. Anne Arundel County Gov't</u>, No. RDB-05-2494, 2007 U.S. Dist. LEXIS 61321, at *16 n.6, *18 n.8 (D. Md. Aug. 21, 2007).

created position of process control group leader on the basis of his race.  (Doc. 1 ¶¶ 1, 9-14, 24-27.)  In the Complaint, Bittle claims that ERICO neither gave him an opportunity to apply, nor considered him, for that position, even though he was a more qualified candidate than the eventual selection.  (Id. ¶¶ 9-14.)  Because Bittle has not provided any direct evidence of racial discrimination, the court applies the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000).

Under McDonnell Douglas, a plaintiff must first establish a prima facie case of discrimination.  Id. at 142.  In a case alleging discriminatory failure to promote, a plaintiff must prove that he:  (1) is a member of a protected class; (2) applied for the position; (3) was qualified for the position; and (4) was rejected under circumstances giving rise to an inference of unlawful discrimination.  Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1129 (4th Cir. 1995).  The burden then shifts to the employer to articulate a legitimate,

---

[6]  Section 1981 accords "[a]ll persons within the jurisdiction of the United States . . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  ERICO does not contest the fact that Bittle's employment constituted a contract for purposes of section 1981.  Spriggs v. Diamond Auto Glass, 165 F.3d 1015, 1018-19 (4th Cir. 1999) (holding that "an at will employment relationship is contractual" and that "such relationships may therefore serve as predicate contracts for § 1981 claims"); Luallen v. Guilford Health Care Ctr., No. 1:02CV00738, 2003 U.S. Dist. LEXIS 23241, at *12 (M.D.N.C. Dec. 18, 2003) (same).

nondiscriminatory reason for its actions. <u>Reeves</u>, 530 U.S. at 142. If the employer does so, the employee must present evidence that the articulated reason was pretext for unlawful discrimination. <u>Id.</u> at 143. The plaintiff bears the ultimate burden of persuasion on the issue of discrimination. <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981). This same standard applies to both Title VII and section 1981 claims. <u>Patterson v. McLean Credit Union</u>, 491 U.S. 164, 186 (1989); <u>Love-Lane v. Martin</u>, 355 F.3d 766, 786 (4th Cir. 2004).

Bittle fails to make out a prima facie case. He only clearly satisfies the first element of his prima facie case because, as an African-American, he is a member of a protected class. (Doc. 1 ¶ 5); <u>Love-Lane</u>, 355 F.3d at 787. While the evidence as to elements two and four is lacking, [7] Bittle plainly

---

[7] Whether Bittle could satisfy the second element – that he applied for the job – is unclear. Courts may waive the application requirement if (1) an employer filled a position without following its formal job posting and application process; and (2) the employee would have applied for the position had he known about it. <u>Williams v. Giant Food Inc.</u>, 370 F.3d 423, 431-32 (4th Cir. 2004). Bittle satisfies the second prong (Doc. 1 ¶¶ 11, 22; Doc. 19 Ex. E at 153), so the issue is the first prong. Bittle alleges that ERICO failed to follow its formal selection process when it selected Holt as the process control group leader. (Doc. 1 ¶ 13.) ERICO contends that this formal process was inapplicable because it did not create a new and distinct position but rather reclassified Holt's job title to reflect the tasks he had performed for several years. (Doc. 20 at 10-11; Doc. 19 Ex. A ¶¶ 3-5.) Whether the position constitutes "a new and distinct relation between the employee and the employer" is unclear on this record. <u>Theard v. Glaxo, Inc.</u>, 47 F.3d 676, 680 (4th Cir. 1995) (quoting Patterson, 491 U.S. at 185), <u>abrogated on other grounds by</u> <u>Reeves</u>, 530 U.S. at 140, 149. For example, ERICO selected Holt to lead a newly formed process control group that had assumed certain duties related to the improvement of the plating process.

fails to adduce evidence that he satisfies the third element of the prima facie case.

Bittle fails to show that he was qualified for the position of process control group leader. Though ERICO never posted the position and job requirements, the court looks to the testimony of the defendant to establish the qualifications necessary. See McCain v. CCA of Tenn., Inc., 254 F. Supp. 2d 115, 123 (D.D.C. 2003) (stating that qualifications not set forth in a job posting may be provided by testimony under District of Columbia's Human Rights Act). Bittle's assertion that he was more qualified than Holt "in terms of experience and education" (Doc. 1 ¶ 14) does not control, because the analysis focuses on the qualifications set by the employer and not by the employee. Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 269 (4th Cir. 2005); see Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 189-90 (4th Cir. 2004) (dismissing failure to promote

---

(Doc. 19 Ex. A ¶ 3.) Although Holt unquestionably has many of the same responsibilities that he performed for several years as a "coordinator" (id. ¶ 4), the process control group leader position also incorporates the new responsibility of directing the activities of individual team members (id. ¶ 5). Furthermore, Bittle testified that Holt exercised newfound authority over the plating teams. (Id. Ex. E at 74-76.) ERICO argues alternatively that even if it had created a new position, it would be exempt from its internal job posting policy. (Doc. 20 at 11.) Here, too, the evidence is unclear, and the court need not sort through the arguments in light of the discussion to follow.

Bittle also fails to muster any evidence that he was rejected under circumstances giving rise to an inference of discriminatory reasons, the fourth element of the prima facie case.

10

claim where plaintiff lacked experience employer deemed important). Bittle was not licensed and certified by the State of North Carolina in water pollution control systems, which ERICO deemed an important qualification for the position of process control group leader. (Doc. 19 Ex. A ¶¶ 4, 5; Ex. E at 79.) Bittle also lacked "depth and breadth of knowledge in the underlying workings of the system," as well as "experience in coordinating, managing and directing either agency reporting, installation, upgrades and/or repairs of the systems." (Id. Ex. A ¶ 4; Ex. E at 53, 79, 86-88, 89, 90, 92, 99-100.)

Even if Bittle could make out a prima facie case, ERICO has given several legitimate, non-discriminatory reasons for its decision to name Holt to the position. Many of these reasons reiterate Holt's qualifications for the job. For example, ERICO deemed it important for the process control group leader to be licensed and certified in wastewater treatment, which Bittle was not. (Doc. 19 Ex. A ¶¶ 4, 5; Ex. E at 53.) Unlike Bittle, Holt also had experience dealing with others and coordinating equipment installation, maintenance, upgrade and repairs. (Id. Ex. A ¶¶ 4-5.) Bittle lacked Holt's experience ordering supplies, as well as coordinating with engineering, maintenance and contractors to repair equipment. (Id. Ex. E at 88, 92, 100.) Bittle also lacked Holt's training and experience developing and maintaining environmental standards and records,

11

cleaning and repairing the Memtek system, rebuilding transfer pumps, and shipping wastewater from the facility. (<u>Id.</u> Ex. E at 79, 86-88, 90, 92, 99-100.) Furthermore, Holt interacted with the county on chemical issues, and when he was unavailable ERICO's only other state certified employee, not Bittle, would do so; Bittle did none of this. (<u>Id.</u> Ex. E at 88-90.)

Moreover, Bittle has not shown "*both* that the reason [ERICO presented] was false, *and* that discrimination was the real reason." <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515 (1993). Here, Bittle proffers no direct evidence that ERICO's articulated reasons for not naming him to that position were pretexts for discrimination. Nor is there sufficient circumstantial evidence upon which a reasonable jury could conclude that ERICO's decision was wrongfully based on race. <u>See</u> <u>LeBlanc v. Great Am. Ins. Co.</u>, 6 F.3d 836, 843 (1st Cir. 1993) (holding that "plaintiff cannot avert summary judgment if the record is devoid of adequate direct or circumstantial evidence of discriminatory animus on the part of the employer"). In comparing the relative qualifications of the candidates, the court finds that Bittle was not discriminated against unlawfully. <u>Alvarado v. Bd. of Trs. Of Montgomery Cmty. Coll.</u>, 928 F.2d 118, 121-22 (4th Cir. 1991) (holding that at the pretext stage, a court will compare the relative qualifications

of the candidates).  Thus, summary judgment is appropriate on this claim.

**B.  Retaliation Claim**

Bittle also claims violation of 42 U.S.C. §§ 2000e-3 and 1981 based on ERICO's retaliation against him for opposing discrimination in the workplace and participating in the EEOC process.  (Doc. 1 ¶¶ 15, 23, 26, 28-31.)  This claim is vague, alleging generally that ERICO "altered the terms and conditions of the plaintiff's employment by lowering his evaluation, denying him awards and training and refusing to consider him for promotions."  (Id. ¶ 30.)  Bittle also charges that ERICO has engaged in unlawful discrimination for "approximately the past ten years."  (Id. ¶ 15.)

**1.  Opposition to Discrimination**

Bittle alleges that ERICO retaliated against him for opposing discrimination in conversations he had with Daria Roebuck, ERICO's Director of Human Resources ("Roebuck"), in February 2004 and with Jarvis Daniel, ERICO's plant manager for the Aberdeen facility, at an undisclosed time in 2004.[8]  (Id. ¶¶

---

[8]  Bittle failed to include this claim in his EEOC charge.  (Doc. 1 Ex. A; Doc. 19 Ex. E at 207-08.)  Courts generally decline to consider claims not raised in the EEOC charge.  Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005).  If the alleged retaliation occurred prior to the filing of the EEOC charge, a plaintiff must include it in the charge to preserve the issue for trial.  Miles v. Dell, Inc., 429 F.3d 480, 492 (4th Cir. 2005).  Because Bittle neither checked the retaliation box on the EEOC charge nor mentioned retaliation in the accompanying narrative, he forfeited his Title VII claim for

13

15, 23, 26, 28-31; Doc. 19 Ex. E at 131-33; Doc. 20 at 12.) As with the failure to promote claim, the McDonnell Douglas burden-shifting framework applies because Bittle offers no direct evidence of retaliation. Reeves, 530 U.S. at 141. To establish a prima facie case of retaliation, Bittle must show three elements: (1) engagement in a protected activity; (2) an action against him that a reasonable employee would have found to be materially adverse; and (3) a causal link between the two events. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64, 68 (2006); Brockman v. Snow, 217 F. App'x 201, 206 (4th Cir. 2007).

Bittle claims that he complained to Roebuck that "there was discrimination going on" and that he and unidentified others were being treated unfairly. (Doc. 19 Ex. E at 131.) He told her that Plant Manager Daniel treated him and his co-workers "with disrespect" when he passed through the plant, avoiding eye contact, not speaking to them, and "smirking." (Id. Ex. E at 132, 135.) Roebuck, he says, promised to "check into it." (Id. Ex. E at 133.) Separately, Bittle claims he complained to

---

retaliation arising from his pre-filing conversations with Roebuck and Daniel. (Doc. 1 Ex. A.) His section 1981 claim survives independent of Title VII, however. CBOCS West, Inc. v. Humphries, 128 S. Ct. 1951, 1958 (2008) (finding that section 1981 encompasses retaliation claims); Aleman v. Chugach Support Servs., Inc., 485 F.3d 206, 213 (4th Cir. 2007) (holding that section 1981 contains grounds for retaliation claim independent from Title VII). Regardless of whether Bittle could proceed under Title VII or section 1981, the legal analysis and result are identical.

14

Daniel about Holt's work ethic, the fact he smoked within the facility, and "numerous [other] things" never specified in the record. (Id.)

As to all claims except the generalized statement that "there was discrimination going on," Bittle could not reasonably have believed that his complaints alleged racial discrimination under Title VII. EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 406 (4th Cir. 2005) (holding that section 2000e-3(a) "protects activity in opposition not only to employment actions actually unlawful under Title VII but also employment actions an employee reasonably believes to be unlawful"). Rather, they dealt with complaints of others' work ethic, personal habits, and the like.

As to all his claims including the generalized statement about "discrimination," Bittle fails to provide any instance of conduct from which a reasonable juror could infer improper racial motive. He fails to demonstrate that Daniel's alleged conduct is directed to workers because of their race; rather, as far as the record shows, it was directed toward everyone, regardless of race. (Doc. 19 Ex. E at 52, 132.) His complaints about Holt are not even about the latter's treatment toward him, much less racially motivated.

Bittle also fails to demonstrate that he suffered a materially adverse action. To be sure, the Supreme Court recently held that "the anti-retaliation provision, unlike the

15

substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington Northern, 548 U.S. at 64. However, this provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Id. at 67. "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means that it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (internal quotation marks omitted).

Bittle cannot make such a showing based on ERICO's alleged pre-charge conduct. His failure to promote claim fails for the reasons noted in Section II.A above. Although a poor performance evaluation could constitute a materially adverse action, Webster v. Rumsfeld, 156 F. App'x 571, 579 (4th Cir. 2005) (citing von Gunten v. Maryland, 243 F.3d 858, 867 (4th Cir. 2001)), he cannot point to any poor evaluations. To the contrary, he acknowledges that he received no negative comments about his individual performance in his 2004 year-end evaluation. (Doc. 19 Ex. E at 172.) Subsequently, he received the highest rating among his peers in his July 2005 mid-year evaluation. (Id. Ex. B ¶ 3, Ex. E at 161-62.) He also concedes that he received many positive remarks in his July 2005 evaluation. (Doc. 19 Ex. E at 164-65.) Comments that he could

16

reflect a more positive attitude, a quality Bittle readily admits he does not exhibit, and lower scores for quality and housekeeping based on the performance of his team (id. Ex. E at 162, 166, Ex. H at 2-3, Ex. A ¶ 11), on this record reflect nothing more than the judgment appropriately left to the discretion of management. EEOC v. Clay Printing Co., 955 F.2d 936, 946 (4th Cir. 1992) ("It is not . . . the function of this court to second guess the wisdom of business decisions."). The record contains no evidence suggesting that these allegedly retaliatory evaluations resulted in any injury or harm to Bittle because he experienced no changes in employment or reductions in pay. In fact, Bittle received a raise in 2005 that was commensurate with those received by other plating team leaders. (Doc. 19 Ex. B ¶ 4.)

The record also fails to support Bittle's claims related to other alleged acts of retaliation. There is no evidence of any award he was denied as a result of protected activity. (Doc. 19 Ex. E at 155-56.) Rather, he blames such unsupported allegations on the lawyer who drafted his "pro se" complaint.[9]

---

[9]    This court condemns the ghostwriting of pleadings for parties purporting to appear pro se. Ghostwriting legal documents "(1) unfairly exploits the Fourth Circuit's mandate that the pleadings of pro se parties be held to a less stringent standard than pleadings drafted by lawyers, (2) effectively nullifies the certification requirement of Rule 11 of the Federal Rules of Civil Procedure[,] . . . and (3) circumvents the withdrawal of appearance requirements" of Local Rule 83.1 of the Middle District of North Carolina. Laremont-

(Id. Ex. E at 156, 160.) Likewise, Bittle is unable to point to any training that he specifically requested that was not approved. (Id. Ex. E at 151.) He never filled out a training request form, and his only request for training that was refused was made on behalf of one of his team members, not for himself. (Id. Ex. E at 150-53.) See Clegg v. Ark. Dep't of Corr., 496 F.3d 922, 929 (8th Cir. 2007) (finding that the denial of a single request for training was not shown to have any impact on plaintiff's eligibility for advancement or pay). Finally, while Bittle suggests that he was denied overtime in 2005, he cannot articulate it and concedes that production was slower company-wide that year. (Doc. 19 Ex. E at 198; Ex. A ¶ 8.)

Bittle also has not shown a causal connection between any conversation and the alleged retaliatory conduct. Although he proffers no evidence of causal connection, courts have held that temporal proximity alone may "satisf[y] the less onerous burden of making a prima facie case of causality." Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). However, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal

Lopez v. Se. Tidewater Opportunity Project, 968 F. Supp. 1075, 1078 (E.D. Va. 1997) (internal citations omitted).

proximity must be 'very close.'" Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam); see, e.g., Pascual v. Lowe's Home Ctrs., Inc., 193 F. App'x 229, 233 (4th Cir. 2006) (three to four months insufficient); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) (thirteen months insufficient); Williams, 871 F.2d at 454, 457 (4th Cir. 1989) (approximately three months sufficient). Bittle alleges that the retaliatory conduct occurred in July 2005, when ERICO presented him with his initial "poor" performance evaluation and selected Holt as the process control group leader.[10] This date is approximately seventeen months after his conversation with Roebuck and at least seven months after his conversation with Daniel. Thus, the court declines to conclude that this temporal proximity alone is a sufficient basis upon which to infer retaliation.

Furthermore, Bittle has not demonstrated that any potential decision-makers were aware of his complaint to Roebuck. "A plaintiff claiming retaliation must establish that the employer had knowledge of the protected activity in order for its subsequent adverse employment actions to be retaliatory."

---

[10] Although the record contains evidence of Bittle's 2004 year-end performance evaluation, he relies primarily on his July 2005 mid-year evaluation as proof of ERICO's retaliatory conduct. (Doc. 19 Ex. E at 160-65.) He also concedes that the 2004 year-end evaluation contained no negative comments about his individual performance. (Id. Ex. E at 172.)

<u>Shields v. Pendleton</u>, 120 F. App'x 956, 962 (4th Cir. 2005).
While Roebuck herself cannot recall that Bittle ever complained
to her about discrimination, there is more importantly no
evidence that supports an inference that Roebuck ever
communicated his alleged complaint to the relevant decision-
makers, Plant Manager Jarvis or Human Resources Manager Harriet
Johnson, or anyone else who was involved in any way with any
decision about Bittle's employment. (Doc. 19 Ex. A ¶ 10, Ex. C
¶ 3, Ex. D ¶ 2, Ex. B ¶ 6.) Even Bittle concedes that his
conversation with Roebuck was known by very few. (<u>Id.</u> Ex. E at
197.) Thus, Bittle fails to establish a causal connection with
respect to the Roebuck conversation, and his retaliation claim
based on pre-charge conduct fails.

## 2. Participation in the EEOC Process

Bittle also alleges that ERICO retaliated against him for
filing an EEOC charge in August 2005.[11] (Doc. 1 ¶ 26 Ex. A.)
Bittle fails to make out a prima facie case.[12] Specifically, he

---

[11] Bittle failed to include this claim in his EEOC charge as well.
(Doc. 1 Ex. A; Ex. E at 207-08.) Courts may exercise jurisdiction
over claims of retaliation that occurred after, or in response to, the
filing of an EEOC charge, without requiring the filing of a separate
charge. <u>Webster</u>, 156 F. App'x at 580; <u>Nealon v. Stone</u>, 958 F.2d 584,
590 (4th Cir. 1992). Thus, Bittle has the right to bring a Title VII
claim for retaliation occurring after the filing of his EEOC charge in
August 2005. As discussed above, the retaliation claim also survives
under section 1981.

[12] Unlike his retaliation claim for opposition to discrimination, here
Bittle has engaged in a protected activity with respect to his
retaliation claim for participation in the EEOC process. Section
2000e-3(a) specifically provides that protected activities include

does not demonstrate that he suffered any materially adverse actions after August 2005. To the contrary, since filing the EEOC charge, Bittle has continued to receive among the highest performance evaluations of his peers. (Doc. 19 Ex. B ¶ 3, Ex. E at 168, 181-82.) In his 2006 year-end evaluation, he received the highest overall rating among plating team leaders. (Id. Ex. B ¶ 3.) He also acknowledges that his 2007 and 2008 reviews were "all right" and concedes that his evaluations actually improved, reflect "commendable" performance, and indicate that management thought he was "doing a good job." (Id. Ex. E at 168, 181-82.) Far from suffering any change in employment or reduction in pay, Bittle reached the salary cap for his grade level, leaving room only for cost of living, but not merit, increases. (Id. Ex. E at 182, Ex. B ¶ 4.) Furthermore, based on the approximately sixteen-month time period between the filing of the EEOC charge in August 2005 and the 2006 year-end evaluation, Bittle may not rely on temporal proximity alone to infer retaliation.

The record also fails to support Bittle's claims for alleged retaliation in the form of awards, training, or

---

"ma[king] a charge" or otherwise "participat[ing] in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). Because Bittle filed an EEOC charge in August 2005, which was subject to an investigation (Doc. 1 Ex. A), he has satisfied the first element of the prima facie case.

overtime.  (Doc. 19 Ex. A ¶ 8, Ex. E at 150-53, 155-56, 198.)

Therefore, his post-charge retaliation claim fails.

**C.   Hostile Work Environment Claim**

Bittle claims violation of 42 U.S.C. §§ 2000e-2(a)(1) and
1981 based on his allegations of a racially hostile work
environment.  (Doc. 1 ¶¶ 21, 26, 28-31.)  He grounds his hostile
work environment claim on the same generalized conduct alleged
in his retaliation claim.[13]  (Id.)

The McDonnell Douglas burden-shifting framework applies
again because Bittle offers no direct evidence of a racially
hostile work environment.  Reeves, 530 U.S. at 141.  To make out
a prima facie claim for a racially hostile work environment, a
plaintiff must demonstrate harassment that was:  (1) unwelcome;
(2) based on race; (3) sufficiently severe or pervasive to alter
the conditions of employment and create an abusive atmosphere;
and (4) imputable to the employer.  EEOC v. Sunbelt Rentals,

---

[13]  Bittle failed to raise a hostile work environment claim in the EEOC
charge.  (Doc. 1 Ex. A; Doc. 19 Ex. E at 208-09.)  Although courts
will consider claims that are reasonably related to those raised in
the original EEOC charge, Chacko, 429 F.3d at 509, a disparate
treatment or retaliation claim would not necessarily support a
subsequent hostile work environment claim.  Green v. Elixir Indus.,
Inc., 152 F. App'x 838, 841 (11th Cir. 2005); Mitchell v. City and
County of Denver, 112 F. App'x 662, 667-68 (10th Cir. 2004).  As with
the failure to promote and retaliation claims, Bittle's section 1981
claim survives even if his Title VII claim is procedurally barred.  42
U.S.C. § 1981(b); Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369,
383 (2004); Spriggs v. Diamond Auto Glass, 242 F.3d 179, 184 (4th Cir.
2001).  Regardless of whether Bittle proceeds under Title VII or
section 1981, the legal analysis and result are identical.  Spriggs,
242 F.3d at 184 (noting that elements required to prove a hostile work
environment claim are the same under Title VII and section 1981).

Inc., 521 F.3d 306, 313 (4th Cir. 2008). The severity and pervasiveness of the harassment must be both subjective and objective. Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333 (4th Cir. 2003) (en banc). That is, a reasonable person in the plaintiff's position must have found the environment objectively hostile or abusive. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82 (1998). General complaints of rudeness fail. Combs-Burge v. Rumsfeld, 170 F. App'x 856, 862 (4th Cir. 2006). A plaintiff who fails to demonstrate conduct that was "related to his race, or that his workplace was permeated with racially discriminatory behavior" will have summary judgment granted against him. Jones v. Billington, 12 F. Supp. 2d 1, 12 (D.D.C. 1997).

For the reasons noted above, Bittle fails to make out a prima facie case because he cannot demonstrate that the alleged conduct was based on his race or was objectively severe or pervasive enough to constitute a basis upon which a reasonable jury could determine that ERICO had a racially hostile work environment. In this action, there simply is no evidence of banter related to race. (Doc. 19 Ex. E at 140-41, 145-46.) Bittle's complaints, at best, reflect dislike for the personal habits of Plant Manager Daniel (who allegedly maintained poor eye contact and often had a "smirk" on his face) (id. Ex. E at 132, 135), or affect everyone alike in nondiscriminatory ways

(such as the alleged lack of sufficient heat in the plant) (id. Ex. E at 121-24). The evidence also shows that this conduct was directed to the plating group as a whole, which was composed of both Caucasian and African-American employees. (Id. Ex. E at 52); Honor, 383 F.3d at 191 (finding hostile work environment claim fails where based on professional frustrations and not racial epithets, derogatory terms, demeaning characteristics, or stereotypes). For all these reasons, Bittle's hostile work environment claim fails, too.

## III. CONCLUSION

For the reasons set forth above, there is no genuine issue of material fact as to Bittle's claims, and ERICO is entitled to judgment as a matter of law.

IT IS THEREFORE ORDERED THAT ERICO's motion for summary judgment (Doc. 19) is GRANTED and that this matter be, and hereby is, DISMISSED WITH PREJUDICE.

/s/ Thomas D. Schroeder
United States District Judge

September 16, 2008

24